Henry G. Rendler
CA State Bar # 83704
Attorney at Law
1550 The Alameda, Suite 308
San Jose, California 95126
Telephone:     (408) 293-5112
Facsimile:     (408) 293-4939
henry@rendlerlaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 12-40369 WJL (13) |
| Paul Roger Mulder & Vicki Lorraine Mulder, | Date: 9-24-2015<br>Time: 1:30 P.M. |
| Debtors. | Room: Courtroom 220<br>Judge: Hon. William J. Lafferty |

**Reply to Trustee's Opposition to Application for Compensation**

TO: Honorable William J. Lafferty, U.S. Bankruptcy Judge:

**Introduction**:

1.  On July 23, 2015, Henry G. Rendler, Esq., Attorney for Chapter 13 Debtors Paul Roger Mulder & Vicki Lorraine Mulder, filed and served his Supplemental Application for Compensation ("Application") [Doc 57], along with Notice of Hearing thereon [Doc 58], with the matter set for hearing on August 13, 2015 @ 1:30 P.M. before U.S. Bankruptcy Judge William J. Lafferty. The Application seeks supplemental attorney's fees of $ 19,910.00 + costs of $ 392.86 for a total of $ 20,302.86. The amount sought is in addition to the $ 3600 received by Applicant as the initial fee per the Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys ("R & R") filed herein on January 13, 2012 [Doc 7]. Objections to the Application were due by August 6, 2015.

2. On July 28, 2015, Chapter 13 Trustee Martha G. Bronitsky ("Trustee") filed her Trustee's Opposition to Application for Compensation ('the Opposition"), objecting to any supplemental fees of more than $ 1200.00, the maximum initial fee amount under the under the R & R for this type of case. There were no other objections filed.

3.  Applicant thereafter requested a continuance of the hearing, due to illness. This was

Page 1

Case: 12-40369   Doc# 60   Filed: 09/22/15   Entered: 09/22/15 18:09:06   Page 1 of 7

graciously granted by the Court, and the matter was continued to September 24, 2015, @ 1:30 P.M.

4. Applicant has met and conferred telephonically with Trustee's counsel, Leo Spanos, Esq., on two occasions, July 30, 2015, and September 21, 2015, in an attempt to possibly resolve the objection or at least narrow the issues. This Reply is filed to address the issues raised in the Objection, and to apprise the Court of the outcome of the parties' discussions.

**Objection:**

4. Trustee asserts four grounds in her Objection (Objection, 4:4-7:21), as follows:

(A) Application includes Fees for Services That Are Covered in the Rights and Responsibilities;

(B) Plan Must Pay 100 Percent to Unsecured Creditors Pursuant to 11 U.S.C. Section 1325(a)(4);

( C) Plan Will Be Unfeasible; and

(D) Application Includes Fees for Services That Have Not Benefitted the Debtors or the Estate.

**Points Believed Resolved:**

5. As to the above objections, it is believed that the parties have resolved Items (B and ( C). These two points are not objections to the application, per se, but rather procedural points which will need to be addressed in the event that supplemental fees are awarded. As to (B), the parties are in accord that Debtors' confirmed 3d Amended Chapter 13 Plan, filed on May 17, 2012 [Doc 43], and confirmed by Judge Lafferty's Confirmation Order After Court Hearing entered on May 30, 2012 [Doc 50], which now provides for payment of 100% on all claims, plus interest at the legal rate of 0.12% per annum (see Plan, Para. 2(d)), will remain unchanged as to the dividend amount and the interest thereon. As to (D), the parties agree that, should supplemental fees be awarded, a motion to modify plan will need to be filed and served, to provide for treatment thereof. The points remaining at issue, therefore, are believed to be (A) and (D), which will be addressed below.

**Discussion and Background of the Rights and Responsibilities:**

6. The last paragraph of the R & R provide: "...if the initial fees ordered by the Court are not sufficient to compensate the attorney for legal services rendered in this case, the attorney further

Case 12-40369    Doc# 60    Filed: 09/22/15    Entered: 09/22/15 18:09:06    Page 2 of 7

agrees to apply to the court for additional fees...." (See R & R, page 2, bottom). It is believed that the initial fees in this case are not sufficient to compensate Applicant for the services which were required, and that is why Applicant filed the Application.

7. Applicant has been practicing primarily bankruptcy and reorganization law since 1981. Most of this work has been in representing individual and small corporations in Chapter 11 cases, individuals in Chapter 13 cases, and a sprinkling of Chapter 7 cases. From 1978-1981, Applicant was involved in a few cases which had been filed pre-Bankruptcy Code, under Chapter XI and XII. Applicant has also represented creditors over the years, although this is a small portion of his practice.

8. For the past 24 years, Applicant has used the Interbill (formerly Pro Data) billing system for all of his clients. Applicant's time records are maintained on a contemporaneous basis. Each and every month, Debtors were sent a statement showing all services and costs for the prior month, marked: "for information only, do not pay–all payments are made by the Chapter 13 Trustee". Applicant has filed scores of fee applications in Chapter 11 cases, which require sorting by project. Applicant has not done so in this Chapter 13 matter, in an attempt to keep costs down. However, Applicant is certainly amenable to doing such a "project" by "project" analysis in this case, should the Court believe it would help.

**Point B–The Services Provided, and the Rights and Responsibilities:**

9. Applicant expended at least 16.5 hours @ $ 350/hour = 5,775, in dealing pre-confirmation with the First Horizon/BNY/Nationstar first trust deed. As noted in the Application, Debtors' home was set for a non-judicial foreclosure sale. Debtors had spent 10+ months in Alameda County Superior Court after suing the lender to enjoin the foreclosure sale. They obtained a preliminary injunction against the sale. About 10 months later, they lost the request for permanent injunction. During these 10 months, Debtors paid $ 2500 per month to the lender, by cashier's checks to the lender's lawyer's trust account. At the time the Chapter 13 petition was filed, these funds remained in the possession of lender's attorneys, McCarthy & Holthus.

10. Debtors' original Chapter 13 Plan filed on January 17, 2012 [Doc 11] provided for payment of the lender's arrears through the plan, and set the arrears at $ 26,935.17, consisting solely

Page 3

of missed installment payments, with Debtors advising Applicant that Debtors had themselves paid the property taxes. On March 5, 2012, the lender filed an objection to confirmation of the plan, alleging, *inter alia*, that the arrears were actually $ 68,945.47. This amount included claimed arrears, plus about $ 18k of claimed escrow advances for payment of property taxes. The $ 68k amount did not reflect as a credit the $ 25k being held by lender's lawyer. This was also set forth in lender's Proof of Claim # 3 filed on February 26, 2012.

11. Based on Debtors' information, on April 23, 2012, Applicant filed an Objection to Claim # 3, alleging that the true claim was $ 26,935.17, that the claim was over-stated by failure to credit the $ 25k held by lender's lawyer, and that there was no escrow shortage as Debtors themselves had paid the property taxes. Applicant spent numerous hours in litigating these issues. As it turned out, the Debtors' information was partially correct. They had paid the lender the $ 25k; they had not paid the taxes, however. The true claim ended up being in the middle, namely, $ 43,945.47. This amount was then set forth in the Debtors' 3d Amended Plan, and ended up being confirmed.

12. The R & R set forth duties for both the clients and their counsel. The debtors are required to "provide the attorney with accurate financial information." ( R & R, paragraph 1). This was not done here. Had it been done, and Applicant had the proper information, Applicant would have objected to the lender's claim solely on the basis that it failed to credit Debtors with the $ 25k being held by lender's counsel. Frankly, had Applicant been furnished with the proper info, it may have been possible to secure an award of attorney's fees against the lender. However, as it turned out, both the lender's info and the Debtor's info were inaccurate. The R & R initial fees are based on having the accurate info. Applicant should not be penalized when he is forced to do additional work under these circumstances.

13. This point also comes into play concerning the additional work performed. Based on the lender's inaccurate claim, and the Debtors' misinformation re the escrow shortage/property tax issue, Debtors' plan could not be confirmed and confirmation was continued. On May 21, 2012, the Trustee filed her Motion to Dismiss the case, for alleged undue delay being prejudicial to creditors. Applicant almost immediately, 3 days later, on May 24, 2012, filed a detailed opposition [Doc 47] to this motion, along with an objection to evidence. Confirmation of the amended plan could not

Page 4

Case 12-40369    Doc# 60    Filed: 09/22/15    Entered: 09/22/15 18:09:06    Page 4 of 7

occur until the lender filed its amended claim, with the credit for the $ 25k payment. The lender delayed in doing this. Ultimately, within the next week, Applicant pushed the matter through by obtaining a stipulation from the lender re plan treatment, and the plan was confirmed shortly thereafter. The odd thing about the motion to dismiss, was that the primary creditor being paid under the plan, the lender's $ 43k arrears, was the same entity holding up confirmation by not amending its inaccurate claim. Again, Applicant would not have been required to perform these additional services, it is believed, had he been provided with the proper information from the Debtors. And, if he had that proper information, it would have made it much more feasible for Applicant to attempt to recover the fees against the lender. Applicant expended about 2.9 hours in responding to the motion and obtaining withdrawal thereof 9 days after it was filed.

14. Under the R & R, the maximum initial fee is $ 4800 for a non-business case, and $ 6,000 for a business case. Debtor Paul Mulder is the principal of a family-owned business, and not a sole proprietor. Thus, under the R & R, the maximum initial fee is $ 4800. However, for some reason, the Trustee's office attempted to treat it as a business case, and sent out a notice of business evaluation. Applicant was forced to expend 4.0 hours @ $ 350/hour = $ 1,400, between February 2 and February 10, 2012, via a brief and declarations of the Debtor, in convincing the office that this was incorrect. Ultimately, the Trustee's office withdrew the notice.

**Point D–The Services Provided were for the Benefit of the Debtors:**

15. Despite having substantial equity in their home, Debtors found themselves unable to get relief under any loan modification programs. They asked Applicant for assistance in trying to refinance their home. Per this request, Applicant spent numerous hours, all clearly delineated in the time sheets attached to the Application, in helping Debtors with this process. Applicant contacted Robert Schuman of Network Financial Group in Morgan Hill. Mr. Schuman specializes in obtaining loans for people in bankruptcy cases and those who have recently exited bankruptcy, and has 20+ years of experience. Applicant has often referred clients to Mr. Schuman for assistance on other cases over the years. On the basic attempted refinance and loan modification work, Applicant expended about 4.5 hours @ $ 350/hour = $ 1,575.

16. During this process, a number of issues arose. First of all, the lender refused to provide

Debtors with a mortgage interest statement showing the $ 25k paid in 2012, which delayed Debtors' filing of their tax returns. Applicant expended about 1.8 hours @ $ 350/hour = $ 630 regarding this issue. Also, Mr. Schuman pulled a credit report, which showed a completed foreclosure sale. This derogatory, and incorrect, credit entry made getting a loan much tougher. Applicant spent at least 10.8 hours @ $ 350/hour = $ 3,780, in dealing with the Debtors, Mr. Schuman, the lender's agents and attorneys, in trying to resolve the issue, ultimately to no avail.

17. At that point, Applicant contacted Ben Dupre, Esq., explained the situation, and referred Debtors to Mr. Dupre. Mr. Dupre has practiced bankruptcy law, and lately has been specializing in credit issues like this. As it turned out, there was ultimately no resolution or change made. Applicant spoke to Mr. Dupre last month, and was advised that any services he performed were done as a courtesy, and there was no charge for his work. As of this date, Debtors have not refinanced their home, continue their payments to the Trustee to cure the $43k of pre-petition arrears, and are on target to complete their plan in approximately January, 2017.

18. Applicant performed the above work. It is not a portion of the R & R services. The services were performed at the request of, and for the benefit of, the Debtors. Applicant is unaware of any requirement that the services become non-compensable solely because the attempt at the refinance was not successful, as argued by the Trustee. As one commentator puts it:

"....Section 330 (of the Bankruptcy Code) does note require that the services result in a material benefit to the estate. It need only be shown that the services were reasonably likely to benefit the estate at the time the services were rendered. {*In re Mednet, 9th Cir. BAP 2000), 251 BR 103, 108; In re Auto Parts Club, Inc., 9th Cir. BAP 1997, 211 BR 29, 33*}. (2014 Cal. Practice Guide, Bankruptcy, The Rutter Group, p. 4-78, Para. 4:1110). The services performed by Applicant were reasonably likely to benefit the estate at the time they were rendered and are thus compensable. This is determined objectively, with reference to the time the services were rendered, and not based on pure hindsight. (11 U.S.C. Section 330(a)(3)(A), ( C); *In re Circle K Corp., BC D AZ 2003, 294 BR 111, 125*). Applicant is aware of Trustee's concerns. The R & R serve a laudable purpose of encouraging efficiency in Chapter 13 practices. However, attorneys who perform extra services for their clients should also be justly compensated. This is the case under even the so-called "no look"

Page 6

fees. The R & R itself spells out a base or "initial" fee. This obviously contemplates that the Court has the authority and discretion to review cases to see if additional fees are warranted. Applicant believes that this is a proper case for such an award. Applicant is prepared to address any issues or questions which the Court may have regarding this Application. (See, e.g., *In re Eliapo, 9th Cir. 2006, 468 F. 3d 592, 599-600*.)

**Proposed Resolution**:

19. After meeting and conferring with the Trustee's lawyer, and in again reviewing the time sheets, Applicant has a proposed resolution of the matter. This would consist of a reduction of the request down to 33.6 hours @ $ 350 per hour - **$ 11,760.** This is broken down as follows:

Pre-confirmation hours of 16.5 @ $ 350/hour = $ 5,775 in dealing with the First Horizon/BNY/Nationstar claim/objection issue; and

Post-confirmation hours of 17.1 @ $ 350/hour = $ 5,985, including:

1.8 hours @ $ 350/hour = $ 630 re the lender's incorrect 1098 mortgage interest form;

4.5 hours @ $ 350/hour = $ 1,575 re the loan modification and attempted refinance; and

10.8 hours @ $ 350/hour = 3,780 re the credit report issue.

**Notice of Correction in Time-Sheet Entries:**

20. Applicant notes that, after further review, there are two erroneous time entries on 5-8-2012, items 117 and 118, amounting to 0.7 hours @ $ 350/hour = $ 245. These entries have been deleted and the correction will appear on the Debtors' next billing statement.

**Conclusion:**

21. Applicant believes that an award of additional fees of $ 11,760 based on 33.6 hours of time @ $ 350/hour is fair and reasonable compensation, and Applicant hereby reduces the Application to said amount. Applicant requests that the Court enter its order approving said fees as an administrative expense herein, and for such and other further relief as is just.

Respectfully submitted,

Dated: 9-22-2015

/s/ Henry G. Rendler
Henry G. Rendler, Esq.
CA State Bar # 83704
Attorney for Debtors